Filed 3/28/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| MARIBEL BALTAZAR, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S208345 |
| v. | ) | |
| | ) | Ct.App. 2/1 B237173 |
| FOREVER 21, INC., et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Appellants. | ) | Super. Ct. No. VC059254 |
| _____ | ) | |

In this case, we are once again asked to determine the enforceability of an arbitration agreement under the law of unconscionability. As a condition of her employment with defendants, plaintiff Maribel Baltazar signed an agreement to resolve any employment-related disputes by means of arbitration. The agreement provides that, in the event a claim proceeds to arbitration, the parties are authorized to seek preliminary injunctive relief in the superior court. The primary question before us is whether this clause renders the arbitration agreement unconscionable, and therefore unenforceable, because it unreasonably favors the employer. We conclude that the clause, which does no more than restate existing law (see Code Civ. Proc., § 1281.8, subd. (b) (section 1281.8(b))), does not render the agreement unconscionable. Finding no other basis to support Baltazar's claim of unconscionability, we affirm the judgment of the Court of Appeal.

**I.**

In November 2007, Baltazar was invited to a job interview at a Los Angeles warehouse operated by Forever 21, a clothing retail merchandiser. When she arrived for the interview, she was asked to fill out an 11-page employment application. Pages 8 and 9 of the application consisted of an arbitration agreement. Several blank spaces on the application were highlighted in yellow, indicating places where Baltazar should sign. Although Baltazar signed all other portions of the application, she initially refused to sign the arbitration agreement. A Forever 21 employee told Baltazar, "[S]ign it or no job." Baltazar then signed the arbitration agreement and was hired.

The agreement provides that the parties "mutually agree" to arbitrate "any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee." The agreement specifies that the disputes subject to arbitration "*include but are not limited to*: claims for wages or other compensation due; claims for breach of any employment contract or covenant (express or implied); claims for unlawful discrimination, retaliation or harassment . . . , and Disputes arising out of or relating to the termination of the employment relationship between the parties, whether based on common law or statute, regulation, or ordinance." (Original italics.) In the event the parties proceed to arbitration, the agreement provides that either party may seek provisional relief: "Pursuant to California Code of Civil Procedure [section] 1281.8 either party hereto may apply to a California court for any provisional remedy, including a temporary restraining order or preliminary injunction." The agreement also contains a confidentiality provision: "Both parties agree that the Company has valuable trade secrets and proprietary and confidential information. Both parties agree that in the course of any arbitration proceeding all necessary steps will be taken to protect from public disclosure such trade secrets and

2

proprietary and confidential information." And finally, as relevant here, the agreement provides that if a court determines that "the parties['] agreement to arbitrate under the Model Rules for Arbitration of Employment Disputes of the American Arbitration Association is not enforceable," then the parties will arbitrate the dispute under the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.).

Baltazar resigned from Forever 21 in January 2011. Later that year, she filed a complaint against defendants in the superior court. Her complaint alleges that during the course of her employment at Forever 21, she suffered verbal and physical harassment, race and sex discrimination, and retaliation, all in violation of California law.[1] Defendants filed a motion to compel arbitration under the terms of the agreement that Baltazar had signed. Baltazar opposed the motion, arguing that the arbitration agreement was unconscionable and therefore unenforceable. Agreeing with Baltazar, the trial court denied the motion to compel arbitration. The trial court found that the agreement was procedurally unconscionable because

---

[1]     The complaint contains a total of nine causes of action, six of which arise under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.): (1) hostile work environment based on racial harassment (Gov. Code, § 12940, subd. (j)); (2) failure to prevent racial harassment and discrimination (*id*., subd. (k)); (3) race discrimination (*id*., subd. (a)); (4) hostile work environment based on sexual harassment (*id*., subd. (j)); (5) failure to prevent sexual harassment (*id*., subd. (k)); (6) retaliation (*id*., subd. (h)); (7) violations of Civil Code sections 51.7 and 52, which govern hate violence and threats of hate violence; (8) constructive discharge in violation of public policy; and (9) intentional infliction of emotional distress.
        Civil Code section 51.7 was amended in 2014 to provide that any contract for goods or services entered into after January 1, 2015, that requires arbitration of an alleged violation of the section as a condition of entering into the contract is, to that extent, unconscionable. (See Civ. Code, § 51.7, subd. (b)(4) & (8).) The amendment's relevance, if any, to this case is not before us, and we express no view on the matter.

3

of the parties' unequal bargaining power. It explained that Forever 21 had required Baltazar to sign the agreement, without modification, as a condition of receiving employment. The trial court also found that the agreement was substantively unconscionable because (1) it lists only employee claims as illustrative examples of the types of disputes to which it applies, (2) it gives Forever 21 the right to protect trade secrets and other confidential information, and (3) it still requires arbitration even if a court finds the agreement to be unenforceable insofar as it requires arbitration under the model rules of the American Arbitration Association (AAA).

The Court of Appeal reversed. It agreed with the trial court's conclusion that the agreement was "oppressive and procedurally unconscionable" because Baltazar "was required to sign the Agreement as a condition of employment, was unable to negotiate the terms of the Agreement, and had no meaningful choice in the matter." But the Court of Appeal disagreed with the trial court's conclusion that the agreement was substantively unconscionable. The court rejected Baltazar's argument that the clause of the arbitration agreement permitting either party to seek provisional relief in superior court was substantively unconscionable because such relief more often serves the interests of employers than employees. On this point, the Court of Appeal expressly disagreed with *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387 (*Trivedi*). The court similarly rejected Baltazar's arguments that the agreement's list of examples of employment-related disputes subject to arbitration and its confidentiality provision were unfairly one-sided, rendering the agreement unconscionable. Finally, the court rejected Baltazar's argument that the arbitration agreement at issue here was unconscionable because it required arbitration even if a court determined the agreement to be unenforceable, explaining: "The Agreement states that arbitration will be conducted pursuant to the rules of the American Arbitration Association

4

. . . , but if those rules are found unenforceable, the arbitration will proceed under the CAA." That provision, the court concluded, "simply provides an alternative means of arbitration if [the AAA] rules are unenforceable for some reason," and does not require arbitration in the event a court declares the agreement itself to be unenforceable.[2] We granted Baltazar's petition for review.

## II.

## A.

As a starting point for our analysis, we review general principles of unconscionability. " 'One common formulation of unconscionability is that it refers to " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133 (*Sonic II*).)

" 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'

---

[2]     In her merits briefing, Baltazar seeks to challenge the Court of Appeal's treatment of this claim. The challenge does not, however, fall within the scope of the issues on which we granted review, and is therefore not properly before us.

[Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

"[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided. [Citation.] . . . [T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced (see *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817–818), contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' (*Id.*, at p. 818.)" (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.) We have instructed that courts must be "particularly attuned" to this danger in the employment setting, where "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." (*Armendariz*, *supra*, 24 Cal.4th at p. 115.)

"The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), ' "unduly oppressive" ' (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925 . . . ), ' "so one-sided as to 'shock the conscience' " ' (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55

6

Cal.4th 223, 246 . . . ), or 'unfairly one-sided' (*Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th [1064,] 1071).  All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' (*Schnuerle v. Insight Communications Co.* (Ky. 2012) 376 S.W.3d 561, 575 . . . ), but with terms that are 'unreasonably favorable to the more powerful party' (8 Williston on Contracts (4th ed. 2010) § 18:10, p. 91).  These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.'  (*Ibid.*)"  (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.)

"We further observed in *Sonic II* . . . that 'an examination of the case law does not indicate that "shock the conscience" is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others.'  (*Sonic II*, *supra*, 57 Cal.4th at p. 1159.)  Nor do we see any conceptual difference among these formulations. Rather, 'courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond* "*a simple old-fashioned bad bargain.*" '  (*Id.* at p. 1160, italics added.)  This latter qualification is important.  Commerce depends on the enforceability, in most instances, of a duly executed written contract.  A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.  Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations:  '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'  (See *Pinnacle Museum Tower*

7

*Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at p. 246 . . . .) . . . [¶] . . . The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911-912.)

**B.**

Here, the trial court concluded that the arbitration agreement was procedurally unconscionable because it was written on a preprinted form and offered on a take-it-or-leave-it basis, thus making it a contract of adhesion. The Court of Appeal agreed. The Court of Appeal noted, however, that while the contract was adhesive in nature, there was no element of surprise. Baltazar not only knew about the arbitration agreement, but initially sought to avoid it, ultimately deciding to accept it because Forever 21 was not willing to offer the job on other terms. Nor was there any oppression or sharp practices on the part of Forever 21. Baltazar was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement. The adhesive nature of the employment contract requires us to be "particularly attuned" to her claim of unconscionability (see *Armendariz*, *supra*, 24 Cal.4th at p. 115), but we do not subject the contract to the same degree of scrutiny as "[c]ontracts of adhesion that involve surprise or other sharp practices" (*Gentry v. Superior Court*, *supra*, 42 Cal.4th at p. 469).

Baltazar argues that a somewhat greater degree of procedural unconscionability is present here — warranting closer scrutiny of the substantive fairness of the agreement's terms — because Forever 21 did not provide Baltazar with a copy of the AAA's rules for arbitration of employment disputes, which, by the terms of the arbitration agreement, govern any arbitration between the parties. Baltazar relies on *Trivedi*, which notes that "[n]umerous cases have held that the

failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability." (*Trivedi*, *supra*, 189 Cal.App.4th at p. 393, citing cases.) But in *Trivedi* itself and in each of the Court of Appeal decisions cited therein, the plaintiff's unconscionability claim depended in some manner on the arbitration rules in question. (See *id.* at pp. 395–396; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721 (*Fitz*); *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406–1407; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89–92; *Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1665–1666.) These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were "artfully hidden" by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement. (*Harper*, *supra*, 113 Cal.App.4th at p. 1406.) Baltazar's argument accordingly might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed. Forever 21's failure to attach the AAA rules therefore does not affect our consideration of Baltazar's claims of substantive unconscionability.

### C.

Baltazar's petition for review raises three claims of substantive unconscionability. We address them in turn.

First, Baltazar argues that the arbitration agreement is substantively unconscionable insofar as it allows the parties to seek a temporary restraining order or preliminary injunctive relief in the superior court. Relying on *Trivedi*, *supra*, 189 Cal.App.4th 387, Baltazar argues that the provisional relief clause

9

unfairly favors Forever 21 because Forever 21 is more likely than one of its employees to seek such relief. In ruling against Baltazar on this point, the Court of Appeal expressly disagreed with *Trivedi*.

In *Trivedi*, *supra*, 189 Cal.App.4th 387, the Court of Appeal invalidated an employment-related arbitration agreement based in part on a provisional relief clause much like the one at issue here. The *Trivedi* court noted that the clause was consistent with a section of the CAA that states in relevant part: "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (§ 1281.8(b); see *Trivedi*, *supra*, 189 Cal.App.4th at p. 397.) The court nevertheless concluded that in the context of employment arbitration, the provisional relief clause tended to favor the employer over the employee because employers are, as a practical matter, more likely than employees to "invoke the court's equitable jurisdiction in order to stop employee competition or to protect intellectual property." (*Trivedi*, at p. 397.)

Drawing on this reasoning, Baltazar contends that the arbitration agreement's express reference to Forever 21's interest in protecting trade secrets and other confidential information during the pendency of the arbitration tends to further reinforce the conclusion that the agreement's provisional relief clause would, in practice, likely favor Forever 21 rather than its employees.

Like the Court of Appeal in this case, we find this argument unpersuasive. Although Baltazar has supplied us with no empirical data to support her claim, we are willing to accept for the sake of argument that employers are, in general, more likely than employees to seek provisional relief during the pendency of an arbitration.

10

Even so, the provisional relief clause does no more than recite the procedural protections already secured by section 1281.8(b), which expressly permits parties to an arbitration to seek preliminary injunctive relief during the pendency of the arbitration.[3] Indeed, the wording of the provisional relief clause, which explicitly refers to the parties' right to seek preliminary injunctive relief "[p]ursuant to California Code of Civil Procedure [section] 1281.8," makes clear that the clause merely confirms, rather than expands, rights available to the parties under that code section. Baltazar does not contend that section 1281.8 itself unfairly advantages one party; her claim, rather, focuses on Forever 21's decision to make express reference to section 1281.8 in its arbitration agreement. But an arbitration agreement is not substantively unconscionable simply because it confirms the parties' ability to invoke undisputed statutory rights. And the clause confirming the availability of provisional relief under section 1281.8(b) confers no advantage on the drafting party that would otherwise be unavailable in the litigation context. (Cf. *Armendariz*, *supra*, 24 Cal.4th at pp. 112-113 [holding that under some circumstances, a provision of an arbitration agreement that employers and employees share arbitration costs pursuant to Code of Civil Procedure section 1284.2 is unenforceable].) Thus, regardless of whether Forever 21 is, practically speaking, more likely to seek provisional remedies than its employees, simply reciting the parties' rights under section 1281.8 does not place Baltazar at an

---

[3]    As previously noted, section 1281.8(b) is a provision of the CAA. The parties below disputed whether the Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs the arbitration agreement instead of, or in addition to, the CAA. The Court of Appeal concluded that the CAA governs the agreement. The court's resolution of that issue was not challenged in the petition for review or in the answer to the petition. We therefore assume, without deciding, that the CAA governs the arbitration agreement.

unfair disadvantage. To the extent *Trivedi* suggested otherwise (*Trivedi v. Curexo Technology Corp.*, *supra*, 189 Cal.App.4th 387, 397), we disapprove it.**4**

Second, Baltazar argues that the arbitration agreement at issue is unfairly one-sided because it lists only employee claims as examples of the types of claims that are subject to arbitration. As noted, the arbitration agreement states that the parties mutually agree to arbitrate "any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee," and it further provides that the disputes subject to arbitration "*include but are not limited to*: claims for wages or other compensation due; claims for breach of any employment contract or covenant (express or implied); claims for unlawful discrimination, retaliation or harassment . . . , and Disputes arising out of or relating to the termination of the employment relationship between the parties,

---

**4** The *Trivedi* court relied on two Court of Appeal decisions: *Fitz*, *supra*, 118 Cal.App.4th 702, and *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 (*Mercuro*). (See *Trivedi, supra*, 189 Cal.App.4th at pp. 396-397.) Neither of those opinions supports the *Trivedi* court's conclusion.

In *Fitz* and *Mercuro*, the appellate courts held that the arbitration clauses at issue in those cases were substantively unconscionable because they "compel[led] arbitration of the claims more likely to be brought by [the employee], the weaker party, but exempt[ed] from arbitration the types of claims that are more likely to be brought by [the employer], the stronger party." (*Fitz*, *supra*, 118 Cal.App.4th at p. 725; see also *Mercuro*, *supra*, 96 Cal.App.4th at p. 176 [the arbitration agreement "compels arbitration of the claims employees are most likely to bring . . . [and] exempts from arbitration the claims [the employer] is most likely to bring against its employees"].)

The arbitration clause in *Trivedi*, by contrast, did not compel arbitration of employee-initiated claims while exempting from arbitration employer-initiated claims; rather, it compelled arbitration of all employment-related claims, while permitting both parties to seek injunctive relief pursuant to section 1281.8(b). Nothing in *Fitz* or *Mercuro* supports the conclusion that such a provision is unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it.

12

whether based on common law or statute, regulation, or ordinance." (Original italics.) In Baltazar's view, this provision makes clear that the kinds of claims typically brought by employees are all subject to arbitration, but it leaves in doubt whether the kinds of claims employers typically bring are also subject to arbitration, thus allowing the employer to litigate that issue when it brings a claim.

We disagree. The arbitration agreement at issue here makes clear that the parties mutually agree to arbitrate all employment-related claims: that is, "any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee." That provision clearly covers claims an employer might bring as well as those an employee might bring. The illustrative list of claims subject to the agreement is just that; the agreement specifically states that such claims "*include but are not limited to*" the enumerated claims, thus making clear that the list is not intended to be exhaustive. It thus casts no doubt on the comprehensive reach of the arbitration agreement. It is not particularly remarkable that the agreement's list of examples might highlight certain types of claims that employees often bring, since part of the purpose of the agreement is to put employees such as Baltazar on notice regarding the scope of the agreement, thus eliminating any possible surprise. The examples do not alter the substantive scope of the agreement, nor do they render the agreement sufficiently unfair as to make its enforcement unconscionable.

Baltazar relies heavily on *Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, which concerned an arbitration agreement covering all disputes " 'relating to Employee's employment by Employer including any changes in position, conditions of employment or pay, or the end of employment thereof.' " (*Id.* at p. 776.) The *Pinedo* court cited this provision, among several others, in concluding that the agreement was substantively one-sided. It explained that the agreement "addresses only" claims "which would normally be brought by

13

the employee against the employer." (*Id.* at p. 781.) We need not decide whether the *Pinedo* court was correct to read the agreement at issue in that case as "addressing only" claims likely to be brought by employees, since, as explained above, we think it clear that the differently worded agreement at issue in this case addresses *both* employment-related claims likely to be brought by employees and those likely to be brought by the employer. In any event, the *Pinedo* court's assessment of the one-sidedness of the agreement at issue in that case rested not only on the provision's list of covered claims, but also on various provisions sharply restricting the damages a prevailing employee could recover (but not the damages a prevailing employer could recover) and requiring that all arbitration costs initially be borne by the employee. (*Id.* at p. 781.) In other words, the *Pinedo* court treated the wording of the provision governing covered claims as merely one more bit of evidence indicating that the agreement was substantially one-sided. No comparable circumstances are present here.

Finally, Baltazar argues that the arbitration agreement here is unduly one-sided because it provides that, in the course of arbitration, "all necessary steps will be taken to protect from public disclosure [Forever 21's] trade secrets and proprietary and confidential information." Baltazar contends that because the agreement neither defines "all necessary steps" nor specifies what constitutes "proprietary and confidential information," the agreement unfairly demands that employees take whatever steps the employer deems "necessary" to protect whatever information the employer claims to be "proprietary and confidential."

Baltazar misreads the confidentiality provision. Nothing in the agreement indicates that an employee must accede to any and all demands Forever 21 might make for the protection of confidential and proprietary information. As defendants explain: "This provision contemplates that if trade secret, confidential and proprietary information need[s] to be introduced into the arbitration that the

14

parties [will] work with the arbitrator to make sure that such information is not disclosed to the public." The agreement does not restrict the use of such information in the proceeding, nor does it pretermit any determination of whether a particular piece of information is a trade secret or otherwise qualifies as proprietary and confidential. Agreements to protect sensitive information are a regular feature of modern litigation, and they carry with them no inherent unfairness.

To the extent that Baltazar's complaint is instead that the agreement calls for the protection of an *employer's* confidential information without similarly calling for the protection of the confidential information of *employees*, we disagree with the suggestion that this omission renders the arbitration agreement unduly harsh or one-sided. As we stated in *Armendariz*, *supra*, 24 Cal.4th at page 117: " '[A] contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable. [Citation.]' " Here, the basis for the extra measure of protection is a legitimate commercial need to protect Forever 21's "valuable trade secrets and proprietary and confidential information" from public disclosure. Although Baltazar may dislike the wording of the confidentiality provision, she does not dispute that it is based on a legitimate commercial need. Moreover, nothing in the agreement precludes employees from seeking comparable protection for their personal information during arbitration proceedings, as circumstances may warrant.

## III.

We conclude that the parties' arbitration agreement is not unconscionable. Accordingly, we affirm the judgment of the Court of Appeal.

**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Baltazar v. Forever 21, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 212 Cal.App.4th 221
**Rehearing Granted**

_____

**Opinion No.** S208345
**Date Filed:** March 28, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Raul A. Sahagun

_____

**Counsel:**

Paul Hastings, Paul. W. Cane, Jr.; Gilbert, Kelly, Crowley & Jennett, Arthur J. McKeon III, Rebecca J. Smith and Edward E. Ward for Defendants and Appellants.

Debra J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of Mark Joseph Valencia, Valencia & Cywinska, Mark Joseph Valencia and Izabela Cywinska Valencia for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Paul W. Cane, Jr.
Paul Hastings
55 Second Street, 24th Floor
San Francisco, CA  94105-3441
(415) 856-7000

Mark Joseph Valencia
Valencia & Cywinska
355 S. Grand Avenue, Suite 2450
Los Angeles, CA  90071
(213) 627-9944