Filed 6/27/16  Urchasko v. Compass Airlines CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JOHN URCHASKO, | B264672 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC558999) |
| v. | |
| COMPASS AIRLINES, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded.

Ogletree, Deakins, Nash, Smoak & Stewart, Lara C. de Leon, Angela Pak and Jack. S. Sholkoff for Defendant and Appellant.

Cummings & Franck, Scott O. Cummings and Lee Frank for Plaintiff and Respondent.

_____

After John Urchasko was fired, he sued his former employer, Compass Airlines, LLC, in superior court asserting statutory and common law claims relating to his employment and discharge.  Compass petitioned to compel arbitration of his action.  The superior court denied the petition, finding Urchasko had not agreed to arbitration and, alternatively, the arbitration agreement Urchasko had signed was unconscionable and, therefore, unenforceable.  On appeal Compass challenges both rulings.  We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Lawsuit*

Urchasko worked as a maintenance supervisor for Compass from October 28, 2013 through February 3, 2014, when his employment was terminated.  On September 29, 2014 he sued Compass alleging causes of action for race and age discrimination, sexual/sexual orientation harassment and retaliation in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), as well as wrongful termination in violation of public policy and related statutory claims under the Labor Code (Lab. Code, § 2802 [failure to reimburse for business expenses]) and the Business and Professions Code (Bus. & Prof. Code, § 17200 [unlawful business practice]).

2. *Compass's Petition To Compel Arbitration*

Compass answered the complaint on November 18, 2014 and on December 31, 2014 filed a petition to compel arbitration.  According to the petition, when he applied for a job with Compass, Urchasko completed an application that contained an arbitration clause:  "I UNDERSTAND AND AGREE that as a condition of my candidacy for employment with Compass any legal claims or disputes that Compass and I may have (including any dispute with any management or other employee or agent acting on behalf of the Company) with respect to my application for employment, employment or termination of employment (except for workers' compensation and unemployment compensation claims and claims arising out of any applicable collective bargaining agreement) shall be decided exclusively by final and binding arbitration, conducted

2

pursuant to the American Arbitration Association's National Employment Dispute Resolution Rules, before a neutral arbitrator, who shall be selected by mutual agreement of the parties and bound to follow the applicable law. Both Compass and I intend for this agreement to be construed as broadly as possible to cover, by way of example only, any claims under federal, state or local statutes or common law . . . . I understand that this means that neither Compass nor I can file a lawsuit in court regarding any employment-related legal issue not covered by an applicable collective bargaining agreement . . . and that both Compass and I specially waive the right to a jury trial on any such issue. This agreement will be interpreted and enforced under the Federal Arbitration Act, 9 U.S.C., § 1 et seq., where applicable and otherwise under the Minnesota Uniform Arbitration Act, Minn. Stat. § 672.08, et seq.

"....

"I ACKNOWLEDGE that the American Arbitration Association's National Employment Dispute Resolution Rules may be found on the Internet at the American Arbitration Association's website and that I may review those rules before signing this application. If I do not wish to agree to this provision as part of the application process, I understand that I must not sign the application, that my application will be incomplete, and that I will not receive further consideration. I understand that this arbitration provision is binding, regardless of whether I receive an offer of employment. I UNDERSTAND THAT THIS IS AN AGREEMENT TO ARBITRATE DISPUTES, AND IS NOT A CONTRACT OF EMPLOYMENT OR INTENDED TO ALTER ANY EMPLOYMENT-AT-WILL STATUS THAT MAY ATTACH IF I AM HIRED."

On a separate line immediately following the paragraphs concerning arbitration, the application stated, "Check the box below to certify that you have read and accept the above statement." The application further stated that the application "will be signed and dated if you are selected for an interview, at the time of the interview." Urchasko was not asked to provide an electronic signature on the online application, and he did not provide one.

3

Based on the information provided in his online application, Compass invited Urchasko for an interview and subsequently hired him. As a condition of his employment, on October 3, 2013 Urchasko signed a printed version of his electronic application containing the arbitration provisions. Although the electronic version of the application contained a box to check acknowledging the arbitration provisions, the printed application Urchasko signed (and which Compass attached to its petition) contained no such acknowledgment box, checked or otherwise. Compass's recruiting administrator, Chris Moser, testified that Urchasko must have checked the box on his electronic application because Compass's computer system was designed so that a person who did not check the box would not be able to complete and submit the application. She testified, "On investigation, due to a computer glitch" at the time his application was printed, the box did not appear on the hard copy of the application Urchasko signed.

3. *Urchasko's Opposition to the Petition To Compel Arbitration*

Urchasko opposed Compass's petition to compel arbitration, insisting he had not agreed to arbitrate disputes with the company. In his declaration Urchasko testified he had filled out the application electronically and, to the best of his recollection, did not check the box acknowledging his agreement to arbitrate. After Compass hired him, Moser presented him with a stack of documents and told him he had to sign them to finalize the employment process. One of those documents was the employment application he had completed online. Urchasko asked Moser whether he had to read the documents presented. Moser told him he did not have to read them, but he did need to sign them if he wanted to be hired. Urchasko signed the documents, including the application containing the arbitration provision, without reading them.

Moser testified she regularly sat down with applicants during the job-offer process, and it was, and remains, her practice to encourage all applicants to review all documents before signing them. Compass also submitted with its reply the declaration of Deb Viens, its recruiting supervisor. Viens testified that in January 2014 Urchasko submitted a new job application seeking a different position with Compass in San Francisco. In that application, which she attached to her declaration, Urchasko had

4

checked the box agreeing to arbitration.[1] Urchasko was not selected for an interview for that position, and he did not sign the 2014 agreement.

### 4. *The Trial Court's Ruling Denying Compass's Petition*

The trial court denied Compass's petition to compel arbitration. In its May 27, 2015 statement of decision, the court ruled Compass had failed to demonstrate Urchasko had agreed to arbitrate. "The defendant's exhibit of an online application of an arbitration clause followed by the phrase 'Check the box below to certify that you have read and accept the above [arbitration] statement' is insufficient to show agreement by the plaintiff to arbitrate his employment contract. That exhibit does not show any box, let alone one checked by the plaintiff." The court alternatively ruled the agreement, provided to Urchasko on a take-it-or leave-it basis in "tiny font" "replete with confusing exceptions, legalisms, and legal authorities" and without a copy of the American Arbitration Association rules to which it referred, was unconscionable.

## DISCUSSION

### 1. *Standard of Review*

Code of Civil Procedure section 1280 et seq. authorizes a summary procedure to enforce a valid agreement to arbitrate: "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) "'We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision

---

[1] Urchasko objected to this evidence, asserting the 2014 application was irrelevant. The court did not rule on his objection directly, but the record suggests it did not consider the 2014 application in reaching its decision.

de novo.'" (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 683 (*Lane*); accord, *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

### 2. *The Trial Court Erred in Denying Compass's Petition To Compel Arbitration*
#### a. *Urchasko signed an agreement to arbitrate*

Under both federal and state law the "'*threshold question presented by a petition to compel arbitration is whether there exists an agreement to arbitrate*.'" (*Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396; see *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [the right to compel arbitration rests on the existence of a valid agreement to arbitrate; "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate"]; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356 [same].)

As with any other contract, an agreement to arbitrate requires the mutual consent of the parties. (*HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1109; see *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 ["contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense'"]; Civ. Code, § 1580 [same].) Mutual consent is ascertained from the language of the written agreement alone, whenever possible. (Civ. Code, § 1639; see Civ. Code, § 1638 ["[t]he language of the contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity"]; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 [mutual consent is determined under an objective standard—"the reasonable meaning" of parties' words and acts—and not by "their unexpressed intentions or understandings"].)

In determining that Urchasko had not agreed to arbitration, the trial court emphasized the language in the printed October 3, 2013 agreement requesting that Urchasko "[c]heck the box below to certify that you have read and accept the above statement." Because the printed agreement contained no such acknowledgment box, checked or otherwise, the court ruled Urchasko had not acknowledged or agreed to arbitration.

Accepting the court's resolution of all factual conflicts in favor of the judgment for which substantial evidence exists, including Urchasko's testimony that he did not check any box acknowledging the arbitration clause on his electronic application or on the printed hard copy, we nonetheless conclude the trial court erred in ruling the absence of a marked acknowledgment in the October 3, 2013 agreement was dispositive on the question of mutual assent. There is no dispute Urchasko signed the printed application, which expressly stated his signature constituted an agreement to arbitrate and specifically instructed him not to sign the agreement if he did not agree to arbitration. Urchasko's signature on that agreement, therefore, unquestionably constituted an objective manifestation of his assent to arbitration. (Cf. *Banner Entertainment v. Superior Court*, *supra*, 62 Cal.App.4th at p. 358 ["[w]hen it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created"]; see generally *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562 [on issues of mutual assent, objective intent, as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation]; *Alexander v. Codemasters Group Limited, supra*, 104 Cal.App.4th at p. 141 [same].)

In an attempt to rebut this conclusion, Urchasko argues by not checking the box in his electronic application, he effectively submitted a counteroffer, which Compass then accepted. (See *Berg v. Darden* (2004) 120 Cal.App.4th 721, 723 [counteroffer operates as rejection of offer].) If Compass were relying on the electronic version of the application submitted by Urchasko to compel arbitration, we would agree the absence of both a signature and a checked box supported the trial court's finding of lack of mutual assent to arbitration. But Compass did not accept Urchasko's counteroffer, if, in fact, he made one. After Urchasko returned that form, Compass presented him with the hard copy version of the application—either reasserting its original proposal or providing a counter to Urchasko's counteroffer. Urchasko signed that hard copy agreement without

crossing out or otherwise altering any of its terms, including the arbitration provisions. As discussed, his failure to check a nonexistent box on an agreement that expressly provided his signature indicated his consent to arbitrate did not amount to a rejection of the arbitration terms; and the trial court did not so find.

Urchasko's failure to read the hard copy of the agreement is no defense. (See *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872 ["[a] cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement"]; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 ["one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"].)[2]

### b. *The agreement to arbitrate covers this dispute*

The October 3, 2013 arbitration agreement, by its terms, covers "any legal claims or disputes that Compass and I may have (including any dispute with any management or other employee or agent acting on behalf of the Company) with respect to my application for employment, employment or termination of employment . . . ." It states, "Both Compass and I intend for this agreement to be construed as broadly as possible to cover, by way of example only, any claims under federal state or local statutes or common law . . . ." Plainly, every claim in Urchasko's lawsuit—his statutory claims for discrimination, harassment, retaliation and unlawful employment practices and his claim for wrongful termination—fall well within the scope of the agreement. (See *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1249 (*Baltazar*) [examples of statutory claims

---

[2]    This general proposition that a person who signs a contract is bound by its terms whether or not he read it may be subject to exception when the contract is one of adhesion and the provision in dispute is not plain or conspicuous and is contrary to the reasonable expectation of the weaker party. (*Smith v. Westland Life Ins. Co.* (1975) 15 Cal.3d 111, 122-123; cf. *San Francisco Newspaper Printing Co. v. Superior Court* (1985) 170 Cal.App.3d 438, 443 [not all contracts of adhesion are unconscionable for failure to read; otherwise "all contracts of adhesion would be unenforceable at the whim of the adhering party"].) We discuss unconscionability in section 2c, below.

identified in agreement were included in agreement without limitation; they "do not alter the substantive scope of the agreement"]; *Lane, supra,* 224 Cal.App.4th at p. 683 [agreement to arbitrate all employment-related claims including all wage and hour benefic claims, contract claims and claims for wrongful termination encompassed employee's claims against employer arising out of employment].)

        c. *The arbitration agreement is not unconscionable*

        i. *Governing law*

A petition to compel arbitration based on a written agreement to arbitrate, whether the contract is governed by the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.) or, as here, by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), is properly denied when grounds exist to revoke the agreement. (See Code Civ. Proc., §§ 1281, 1281.2; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1143 (*Sonic Calabasas*) ["FAA 'permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract"' [citation] including '"generally applicable contract defenses, such as fraud, duress, or unconscionability"'"].)

Unconscionability "refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Baltazar, supra,* 62 Cal.4th at p. 1243 [internal quotation marks omitted]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*) [same].)

"[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced

9

[citation] contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching. [Citations.] [C]ourts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." (*Baltazar, supra,* 62 Cal.4th at p. 1244 [internal quotation marks omitted].)

Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although they need not be present in the same degree. (*Baltazar, supra*, 62 Cal.4th at p. 1243; *Pinnacle, supra,* 55 Cal.4th at p. 246.) Essentially the court applies a sliding scale to the determination: "'The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle,* at p. 247; accord, *Baltazar,* at p. 1244; *Armendariz v. Foundation Health Psychcare Services*, *Inc.* (2000) 24 Cal.4th 83, 114.)

"The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911-912; see generally *Baltazar, supra,* 62 Cal.4th at p. 1245 ["[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract[;] [a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain"].)

The trial court's unconscionability determination, absent conflicting extrinsic evidence, is question of law subject to de novo review. (*Pinnacle, supra,* 55 Cal.4th at p. 236; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469.) When the extrinsic evidence is in conflict, we review the court's resolution of that factual dispute for substantial evidence. (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663.)

10

ii. *Although there are some aspects of procedural unconscionability, the absence of any substantive unconscionability is fatal to Urchasko's unconscionability argument*

As the trial court observed, there are some aspects of procedural unconscionability in the printed "Application for Employment, Applicant Certification and Agreement" Urchasko signed. The agreement was offered on a take-it-or-leave-it basis as a condition of employment with no opportunity for negotiation. In addition, while perhaps more user-friendly in its electronic form, the printed agreement contained small print (in 10 point font or less) and, according to Urchasko, was given to him as part of a "stack" of documents to sign in order to complete the employment process. (The size and contents of the "stack" was not established.)

On the other hand, the document is neither long nor dense. Four of its five and one-half pages are the employment application, consisting of substantial unused space and including background information written by the applicant such as name, address, phone number, past employment and past job duties. The portion of the document titled "Applicant Certification and Agreement" is only five paragraphs long on a single page, two of which are the arbitration provisions, set apart from the rest of the agreement and preceded by the words in all capital letters, "I UNDERSTAND AND AGREE . . . ." In addition, far from being replete with legalese, the arbitration agreement contains straightforward language reflecting a broad agreement to arbitrate any employment-related claim. (See *Lane, supra,* 224 Cal.App.4th at p. 690 [printed contract contained no "hidden" terms and was not unconscionable even if it was adhesive in nature].) Crediting Urchasko's testimony, as we must to the extent it supports the judgment, Urchasko was not lied to or otherwise manipulated into signing the agreement. He simply elected not to read it. (See *Baltazar, supra,* 62 Cal.4th at p. 1245 ["Baltazar was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement. The adhesive nature of the employment contract requires us to be 'particularly attuned' to her claim of unconscionability [citation], but we do not subject the contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp

11

practices.'"]; see also *San Francisco Newspaper Printing Co. v. Superior Court* (1985) 170 Cal.App.3d 438, 443 [where the nonassignability clause was clear and conspicuous, plaintiff's failure to read it is no "excuse," even in contract of adhesion].)

Although the agreement suffers from a moderate degree of procedural unconscionability, it is devoid of any substantive unconscionability. As discussed, that the agreement was offered as a "mandatory, non-negotiable requirement" as a condition of employment, which the trial court evaluated as substantive unconscionability, relates to procedural unconscionability. (*Pinnacle, supra,* 55 Cal.4th at p. 247 ["[P]rocedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'"]; *Lane, supra,* 224 Cal.App.4th at p. 689 [same].) Nor is there a lack of mutuality, as Urchasko contends, which would constitute a form of substantive unconscionability. (See *Armendariz v. Foundation Health Psychcare Services*, *Inc.*, *supra*, 24 Cal.4th at p. 117 [arbitration agreement that imposes on an employee the obligation to arbitrate but does not impose the same obligation on the employer lacks mutuality and is substantively unconscionable]; *Serpa v. California Surety Investigations*, *Inc.* (2013) 215 Cal.App.4th 695, 705.)

According to Urchasko, the provision stating "this is not a contract of employment" permits Compass to "claim there is no contract and avoid arbitration," while the "employee has to submit to arbitration." This one-sided aspect of the contract, he argues, effectively makes Compass's obligation to arbitrate illusory. (See generally *Mattei v. Hopper* (1958) 51 Cal.2d 119, 122 [an agreement is illusory if it leaves one party "free to perform or to withdraw from the agreement at his own unrestricted pleasure"].)

Urchasko's argument is based on a truncated, and misleading, excerpt of the language in the agreement. The document provides, "THIS IS AN AGREEMENT TO ARBITRATE DISPUTES, AND IS NOT A CONTRACT OF EMPLOYMENT OR INTENDED TO ALTER ANY EMPLOYMENT AT-WILL STATUS THAT MAY

12

ATTACH IF I AM HIRED." When all the language of the provision is considered, not just the snippet proffered by Urchasko, it is apparent that both Compass and Urchasko are required to arbitrate any employment-related disputes. The agreement to arbitrate is not one-sided nor is Compass's duty to arbitrate illusory. (See *Baltazar, supra,* 62 Cal.4th at p. 1246 [agreement to arbitrate any claim arising out of or in any way related to the hire or employment or termination of employment broadly imposed a mutual obligation to arbitrate on both the employer and employee]; *Serpa v. California Surety Investigations, Inc., supra*, 215 Cal.App.4th at p. 705.)

Finally, Urchasko emphasizes the arbitration agreement incorporated by reference the rules of the American Arbitration Association (AAA) and directed the applicant/employee to the AAA's website without including the rules for immediate review. Even if the failure to attach the AAA rules governing the arbitration is an appropriate factor to consider in assessing procedural unconscionability (see *Lane, supra,* 224 Cal.App.4th at p. 690 [incorporation of AAA rules by reference without attaching them could be a small factor in support of a finding of procedural unconscionability; standing alone, or even in the context of an adhesion contract, without more, it is not enough to support a finding of procedural unconscionability]; accord, *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472), this argument does not support a finding of substantive unconscionability. As the Court explained in *Baltazar* in rejecting a similar contention, "Baltazar's argument [failure to attach the AAA rules governing arbitration that were incorporated by reference] might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed. [The] failure to attach the AAA rules therefore does not affect our consideration of Baltazar's claims of substantive unconscionability." (*Baltazar, supra,* 62 Cal.4th at p. 1246.)

In sum, even considering the aspects of procedural unconscionability found by the trial court and urged on appeal by Urchasko, the absence of even a modicum of

substantive unconscionability is fatal to Urchasko's unconscionability argument.  (See *Baltazar*, *supra*, 62 Cal.4th at p. 1244 ["'[a] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided'"]; *Roman v. Superior Court, supra,* 172 Cal.App.4th at p. 1471 ["whatever measure of procedural unconscionability may be present . . . [t]here must also be some measure of substantive unconscionability"].)  The trial court erred in ruling the agreement was unconscionable and unenforceable.

## DISPOSITION

The judgment is reversed, and the matter remanded to the trial court with directions to vacate its order denying arbitration and to issue a new order granting Compass's petition to compel arbitration of Urchasko's complaint.  Compass is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.