Filed 2/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS VO, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TECHNOLOGY CREDIT UNION, <br><br> Defendant and Appellant. | H051619 <br> (Santa Clara County <br> Super. Ct. No. 23CV417184) |

Appellant Technology Credit Union (TCU) appeals from a trial court order denying a motion to compel arbitration. Respondent Thomas Vo (Vo) signed an employment arbitration agreement with TCU. After Vo was terminated and sued TCU for violations of the Fair Employment and Housing Act (FEHA), TCU moved to compel arbitration and stay all proceedings. The trial court, relying in part on *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360 (*Aixtron*), found the arbitration agreement unconscionable due to the arbitrator's inability to compel prehearing third party discovery. For the reasons discussed below, we reverse the order and remand with instructions to grant the motion to compel arbitration and to stay the proceedings pending arbitration.

## I. FACTS AND PROCEDURAL BACKGROUND

Prior to beginning his employment with TCU in 2020, Vo signed an employment arbitration agreement (the agreement). Pursuant to the agreement, both parties agreed "to submit to mandatory binding arbitration any dispute, claim or controversy arising out of or relating to Employee's employment with the Company." The agreement defined

"[a]rbitrable [c]laims" as claims for discrimination, harassment, unpaid wages, wrongful termination, and breach of contract, among others. The agreement excluded any claims not subject to a contractual requirement of mandatory binding arbitration by law, such as claims for workers' compensation benefits and unemployment compensation. The parties agreed that a neutral arbitrator from JAMS would administer any arbitrations pursuant to its employment arbitration rules and procedures available at the JAMS website. The incorporated JAMS rules and procedures were not attached to the agreement. By signing the agreement, the parties acknowledged they read and understood the agreement and entered into it freely and voluntarily.

While employed with TCU, Vo contracted COVID-19 and developed long-term health issues, which persisted throughout his employment. Vo was eventually terminated and brought suit against TCU, alleging (1) harassment in violation of FEHA; (2) discrimination in violation of FEHA; (3) failure to accommodate in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; (5) retaliation in violation of FEHA; (6) failure to prevent discrimination and retaliation in violation of FEHA; and (7) wrongful termination in violation of public policy.

TCU moved to compel arbitration pursuant to Code of Civil Procedure section 1281.2[1] and stay all proceedings. Vo opposed the motion to compel and argued the arbitration agreement was both procedurally and substantively unconscionable. Vo asserted the agreement was procedurally unconscionable as a contract of adhesion and substantively unconscionable because it failed to expressly incorporate the California Arbitration Act (CAA) provision that allows arbitrators to permit third party discovery. (§ 1283.05; *Aixtron*, *supra*, 52 Cal.App.5th 360.) In its reply, TCU argued that the agreement provided for sufficient third party discovery by incorporating the JAMS rules and allowing for third party testimony at the arbitration hearing.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

2

For the first time with its reply, TCU requested that the trial court take judicial notice of JAMS rules effective June 1, 2021. The trial court declined to take judicial notice of these rules, finding the request untimely, not supported by the law, and irrelevant to the court's decision.

After a hearing on the motion to compel, the trial court found the agreement unconscionable and denied the motion. The court found the agreement was procedurally unconscionable as an adhesion contract and, in "a close factual and legal call," concluded that the agreement was substantively unconscionable and unenforceable. Relying on *Aixtron*, *supra*, 52 Cal.App.5th 360, the court determined that the agreement did not give an arbitrator the authority to compel third party discovery and that this limitation improperly prevented Vo from obtaining the third party discovery necessary to arbitrate his case.

TCU timely appealed the order denying the motion to compel arbitration.

## II. DISCUSSION

TCU argues that the trial court erred by finding the agreement unconscionable. TCU does not dispute that the agreement is procedurally unconscionable as an adhesion contract. Instead, TCU contends that the discovery clause does not render the agreement substantively unconscionable when evaluated under the discovery factors established in the Supreme Court's recent decision in *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*). Specifically, TCU argues that the agreement cannot be substantively unconscionable because the incorporated JAMS Rule 17(e), effective June 1, 2021, provides for adequate third party discovery. TCU maintains that a slight limitation on the arbitrator's authority to order discovery preserves the expediency of arbitration while still allowing access to adequate discovery. TCU also argues that the trial court erred in failing to take judicial notice of the JAMS rules.

Vo argues that the agreement is unconscionable and unenforceable. He does not dispute the trial court's finding of procedural unconscionability and urges the court to

3

closely evaluate the agreement's terms for overreach.  Vo asserts that the agreement is substantively unconscionable under *Ramirez*, *supra*, 16 Cal.5th 478, due to discovery limitations.  Relying on *Aixtron*, *supra*, 52 Cal.App.5th 360, he contends that the discovery clause completely bars third party discovery because it fails to reference the relevant CAA provision.  He argues that *Aixtron* also established the JAMS rules do not apply to third parties.  Vo maintains he cannot vindicate his statutory rights without obtaining third party discovery, rendering the agreement unconscionable.

The parties do not dispute that Vo signed the agreement with the JAMS rules incorporated by reference or that the parties are bound by the JAMS rules.  Instead, their arguments concern the validity of the arbitration agreement under the law, despite the incorporation of the JAMS rules.  Appellate review of an order denying arbitration based on the unconscionability of an arbitration agreement is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law.  (*Ramirez*, *supra*, 16 Cal.5th at p. 493.)  As the facts are undisputed, we review the trial court's denial of arbitration de novo.

A. *Judicial Notice*

The trial court denied TCU's request for judicial notice of the JAMS rules because it was untimely, not supported by the law, and irrelevant to the court's decision.  TCU argues that the trial court erred in declining to take judicial notice of the JAMS rules as facts and propositions "not reasonably subject to dispute" and "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (Evid. Code, § 452, subd. (h).)  It states that it included a link to the JAMS rules with its initial motion to compel and asks this court to take judicial notice of the JAMS rules under Evidence Code section 459.  Vo does not address the trial court's ruling and does not oppose the request for judicial notice.

A court's ruling on a motion for judicial notice is typically reviewed for abuse of discretion.  (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520.)  We

4

must affirm the trial court's ruling "unless the information provided to the trial court was so persuasive that no reasonable judge would have denied the request for judicial notice[.] [Citation.]" (*Ibid.*)

Based on our review of the record, we conclude the trial court did not abuse its discretion by denying TCU's request for judicial notice. TCU requested that the court take judicial notice of JAMS rules effective June 1, 2021. But these rules were not in effect when the parties signed the arbitration agreement in 2020. (See *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1192-1194 [under the "clear and unmistakable" test, the American Arbitration Association (AAA) rules in effect at the time of adoption by the parties, not future rules, must state that the arbitrator has authority to decide arbitrability].) The trial court reasonably denied TCU's request to take judicial notice of irrelevant JAMS rules and procedures.

On our own motion, we take judicial notice of the JAMS Comprehensive Arbitration Rules and Procedures, effective July 1, 2014 (JAMS Rules). (Evid. Code, § 459.) These JAMS Rules are not reasonably subject to dispute and can be immediately and accurately determined by resorting to the JAMS rules archival website.[2] (Evid. Code, § 452, subd. (h).) The JAMS Rules are relevant to our determination of unconscionability because they establish the discovery procedures in effect at the time of execution of the arbitration agreement.

---

[2] All versions of the JAMS rules and procedures can be found online at (JAMS Arbitration Rules Archive <https://www.jamsadr.com/rules-archive/> [as of Feb. 3, 2025] archived at https://perma.cc/36RP-UK3K.).

B. *Unconscionability*

1. Legal Standard

Federal and California law favor the enforcement of arbitration agreements.[3]
(*Ramirez*, *supra*, 16 Cal.5th at p. 492.)  California law "expresses a ' " 'strong public
policy in favor of arbitration as a speedy and relatively inexpensive means of dispute
resolution.' " ' [Citations.]" (*Ibid.*)  A written arbitration agreement is presumed to be
"valid, enforceable, and irrevocable." (*Ibid.*)

Arbitration of statutory claims can be compelled if the agreement "provides for
more than minimal discovery." (*Armendariz v. Foundation Health Psychcare Services,
Inc.* (2000) 24 Cal.4th 83, 102.)  In *Armendariz*, the California Supreme Court
established a standard for evaluating the validity of discovery limits within arbitration
agreements.  (See *id.* at pp. 104-106.)  While parties can agree "to something less than the
full panoply of discovery provided" in the Code of Civil Procedure, "adequate discovery
is indispensable for the vindication of FEHA claims." (*Id.* at pp. 104, 105-106, italics
omitted.).  " ' "[A]dequate" ' discovery does not mean 'unfettered' discovery.
[Citation.]" (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 983.)  What employees
are "entitled to [is] discovery sufficient to adequately arbitrate their statutory claim,
including access to essential documents and witnesses, as determined by the
arbitrator(s)." (*Armendariz*, at p. 106.)  Even when an arbitration agreement contains no
discovery provision at all, as in *Armendariz*, courts must "infer that when parties agree to
arbitrate statutory claims, they also implicitly agree, absent express language to the
contrary, to such procedures as are necessary to vindicate that claim." (*Ibid.*)

---

[3] The first step in reviewing an arbitration dispute is to determine whether the
Federal Arbitration Act (FAA) or CAA applies.  (See *Aixtron*, *supra*, 52 Cal.App.5th at
p. 391.)  Neither party has taken the position that the FAA applies to this arbitration.
Regardless, only the incorporated JAMS Rules are dispositive here.  We need not resolve
whether the agreement is subject to the FAA or CAA.

While the law favors the enforcement of arbitration agreements, a finding of unconscionability can render the agreement unenforceable. (*Ramirez*, *supra*, 16 Cal.5th at p. 492.) The California Supreme Court clarified the standard for assessing unconscionability of arbitration agreements in its recent *Ramirez* opinion. (*Id.* at pp. 492-493.) There, the plaintiff brought FEHA claims against her former employer, and the employer moved to compel arbitration. (*Id.* at p. 490.) The plaintiff argued the arbitration agreement was unconscionable. (*Ibid.*) The *Ramirez* Court explained that a " 'contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.]" (*Id.* at p. 492.) A contract must be both procedurally and substantively unconscionable to be held invalid, but both elements need not be present to the same degree. (*Id.* at pp. 492, 493.) Instead, "[c]ourts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)" (*Id.* at p. 493.) Procedural unconscionability " 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.]" (*Id.* at p. 492.) Substantive unconscionability considers the fairness of an agreement's actual terms and focuses on whether the contract will create unfair or one-sided results. (*Id.* at p. 493.) The party opposing the enforcement of an arbitration agreement has the burden of establishing both procedural and substantive unconscionability. (*Id.* at p. 492.)

In *Ramirez*, the arbitration agreement was signed during the onboarding process and allowed the parties 90 days to exchange information and take depositions, permitted each party to take up to four depositions, allowed up to 20 interrogatories and 15 requests for documents, and granted the arbitrator the authority to decide all discovery disputes related to the arbitration. (*Ramirez*, *supra*, 16 Cal.5th at pp. 490-491, 503-504.) The plaintiff argued the arbitration agreement was procedurally unconscionable as an

7

adhesion contract and substantively unconscionable due to discovery limitations, among other reasons. (*Id.* at p. 490.) Specifically, she contended that she required at least seven depositions to substantiate her claims, but the discovery provision only allowed for four, rendering it substantively unconscionable.[4] (*Id.* at p. 505.)

The Court found the arbitration agreement was an adhesion contract with a low degree of procedural unconscionability but the potential for overreach warranted close scrutiny of the contract's terms. (*Ramirez, supra*, 16 Cal.5th at p. 494.) The Court then determined that the discovery limitations in the arbitration agreement were not substantively unconscionable for two reasons. (*Id.* at pp. 505-506.) First, it stated that the unconscionability assessment of discovery provisions must only focus on "general factors that can be examined without relying on subsequent developments."[5] (*Id.* at p. 506.) These factors include: (1) the types of claims covered by the agreement, (2) the amount of discovery allowed, (3) the degree to which that amount may differ from the amount available in conventional litigation, (4) any asymmetries between the parties with regard to discovery, and (5) the arbitrator's authority to order additional discovery. (*Ibid.*) The discovery provision could not be substantively unconscionable simply because the plaintiff eventually required more depositions than the provision allowed in writing. (See *ibid.*) The Court then emphasized that "giving the arbitrator authority to expand discovery [was] one way the [*Armendariz*] adequacy concern can be addressed."

---

[4] The *Ramirez* plaintiff stated that she needed to depose her former supervisor, a human resources representative, four people hired by her former supervisor during her pregnancy leave, and the person most knowledgeable at her former employer regarding human resources and pregnancy leave policies. (*Ramirez, supra*, 16 Cal.5th at p. 505, fn. 10.)

[5] In emphasizing that the assessment should not focus on specific circumstances that arise after an arbitration agreement is executed, the California Supreme Court disapproved of *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, and *Davis v. Kozak* (2020) 53 Cal.App.5th 897, three cases the trial court relied on in its finding of unconscionability. (*Ramirez, supra*, 16 Cal.5th at p. 506.)

8

(*Ibid.*)  The discovery provision could have been more precise, but it gave the arbitrator the authority to resolve all discovery disputes in a manner that allowed a full and equal opportunity to discover and present evidence.  (*Ibid.*)  The Court stated that it would assume that the arbitrator would act reasonably and in conformity with the law and that, where a contract is susceptible to two interpretations, a court should select the interpretation that makes the contract valid.  (*Id.* at pp. 506-507.)  The Court concluded that the discovery provision permitted the arbitrator to order expanded discovery necessary to allow fair arbitration of the claim.  (*Ibid.*)  This interpretation eliminated any unconscionability.  (*Id.* at p. 507.)

      2. <u>Procedural Unconscionability</u>

TCU argues that the trial court correctly found that the agreement is an adhesion contract with a minimal degree of procedural unconscionability but maintains that adhesion within a contract is insufficient to hold the agreement unconscionable.  Vo does not dispute the trial court's finding as to procedural unconscionability but contends that the potential for overreach in the employment context warrants close scrutiny of the contract's terms.

Procedural unconscionability addresses unequal bargaining power during contract negotiation and formation.  (*Ramirez*, *supra*, 16 Cal.5th at p. 492.)  Adhesion contracts, or standardized contracts which are imposed and drafted by the party of superior bargaining strength and give the subscribing party only the choice to adhere to or reject the contract, are " 'not the result of freedom or equality of bargaining.'  [Citation.]" (*Ibid.*)  They contain the clear danger of oppression and overreach, which "warrants close scrutiny of the contract's terms."  (*Id.* at p. 494.)  However, adhesion contracts "remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid."  (*Id.* at pp. 492-493.)  Further, when terms are incorporated by reference rather than attached to the arbitration agreement, courts must "more closely scrutinize the substantive

unconscionability of [the] terms." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246.)

As in *Ramirez*, Vo and TCU signed the agreement in standard pre-employment paperwork. Vo was required to sign the agreement as a condition of employment. There was no additional oppression or surprise, and the JAMS Rules were incorporated into the agreement by reference. As we determine there is a minimal degree of procedural unconscionability, we must go on to consider the contract's terms for substantive unconscionability. (See *Ramirez*, *supra*, 16 Cal.5th at p. 494.)

### 3. Substantive Unconscionability

The parties disagree whether the agreement is substantively unconscionable due to the discovery terms defined by the incorporated JAMS Rules. *Ramirez* established five factors to evaluate the unconscionability of a discovery provision in an arbitration agreement: (1) the types of claims covered by the agreement, (2) the amount of discovery allowed, (3) the degree to which that amount may differ from the amount available in conventional litigation, (4) any asymmetries between the parties with regard to discovery, and (5) the arbitrator's authority to order additional discovery. (*Ramirez*, *supra*, 16 Cal.5th at p. 506.) The agreement must permit the plaintiff access to sufficient discovery to adequately arbitrate any claim, but "[t]he scope of what discovery is sufficient is determined by the arbitrator." (*Id.* at p. 505.) Sufficiency can be established by giving the arbitrator the authority to expand discovery. (*Id.* at p. 506.)

Here, the agreement incorporates the JAMS Rules effective July 1, 2014. (See *Gilbert Street Developers*, *supra*, 174 Cal.App.4th at pp. 1192-1194.) JAMS Rule 17 controls prehearing exchange of information. (*JAMS Comprehensive Arbitration Rules & Procedures* (July 1, 2014) <https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2014.pdf> [as of Feb. 3, 2025], archived at <https://perma.cc/7UNY-7QE7>.) Rule 17(b) allows each party to take

10

one deposition of an opposing party or individual under the control of the opposing party. (*Ibid.*) Any issues regarding the time, location, and duration of the deposition must be determined by the arbitrator. (*Ibid.*) It then states: "[t]he necessity of additional depositions shall be determined by the [a]rbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing [p]arties and the witness." (*Ibid.*) Rule 17(d) gives the arbitrator the authority to decide all "dispute[s] . . . regarding discovery issues." (*Ibid.*) The arbitrator may appoint a special master to help resolve a discovery dispute. (*Ibid.*)

The parties evaluate the discovery clause under the five *Ramirez* discovery factors, but their arguments center around the availability of third party discovery. TCU argues that the discovery clause does not render the agreement substantively unconscionable because: (1) the claims subject to arbitration are not one-sided, (2) the quantity of discovery is not limited, (3) the JAMS rules expressly allow for third party discovery, (4) the parties have symmetrical challenges to obtain discovery, and (5) the arbitrator is given explicit authority to order additional discovery. TCU relies on the JAMS rules effective June 1, 2021, which explicitly provide for third party discovery with the approval of the arbitrator under rule 17(e). Since this version of the JAMS rules was not effective at the time the arbitration agreement was effectuated in 2020, TCU's reliance on JAMS rule 17(e) fails.

Vo contends that the discovery provision renders the agreement substantively unconscionable because: (1) the agreement covers witness intensive employment claims, (2) the discovery terms completely bar third party discovery by excluding reference to the CAA and thereby eliminate an arbitrator's authority to order prehearing third party discovery under *Aixtron*, (3) third party discovery is available in conventional litigation, (4) the bar on third party discovery advantages employers as plaintiffs cannot obtain information from relevant witnesses who work for the employer and other third party

11

entities, and (5) an arbitrator has no authority to order additional discovery due to *Aixtron*. He also maintains that the JAMS Rules cannot allow for third party discovery because third parties do not contractually consent to such terms.

### a. Types of Claims Covered by the Agreement

The agreement applies equally to employee and employer initiated claims, carrying the "modicum of bilaterality" required by law. (See *Armendariz*, *supra*, 24 Cal.4th at p. 117.) "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Id.* at p. 120.) By contrast, the agreement here makes clear that the parties mutually agree to arbitrate any and all disputes and claims arising out of Vo's employment. The agreement includes an illustrative list of possible arbitrable claims that are not limited to specific matters and are not meant to be exhaustive. (See *Baltazar*, *supra*, 62 Cal.4th at p. 1249 [finding an arbitration agreement with an illustrative list of claims subject to arbitration was not meant to be exhaustive, did not alter the substantive scope of the agreement, and did not render the agreement sufficiently unfair to make the agreement unconscionable].) The only excluded claims are workers' compensation and unemployment claims, which "are excluded from arbitration by law." (See *Ramirez*, *supra*, 16 Cal.5th at p. 498.) Therefore, any other lawsuit brought by TCU against Vo would be subject to arbitration. The agreement does not raise mutuality concerns.

### b. Arbitrator's Authority to Order Additional Discovery

We conclude the agreement allows Vo access to third party discovery that may be necessary to adequately arbitrate his FEHA claims. While the parties disagree on Vo's evidentiary burden to establish the necessity to subpoena and depose six former employees of TCU, the amount of discovery required by Vo does not impact our analysis because we review the validity of the agreement at the moment of contract formation

12

without reference to subsequent developments throughout the litigation.  (See *Ramirez*, *supra*, 16 Cal.5th at p. 506.)

Consistent with the trial court, Vo relies on *Aixtron* to conclude that the discovery clause bars third party discovery and renders the arbitration agreement substantively unconscionable.  In *Aixtron*, a different panel of this court held that an arbitrator could not compel prehearing third party discovery when the arbitration agreement failed to explicitly authorize discovery from nonparties or failed to incorporate the statutes then in effect that authorized prehearing discovery.  (*Aixtron, supra*, 52 Cal.App.5th at pp. 395-397, 402-404.)  The plaintiff, a former employee of the respondent, took a position with a third party competitor.  (*Id.* at p. 369.)  The respondent then initiated arbitration proceedings against the plaintiff pursuant to an arbitration clause in the plaintiff's confidentiality agreement.  (*Ibid.*)  The arbitration clause did not mention discovery but did state that the arbitration would be conducted in accordance with the rules of the AAA.  (*Id.* at p. 371.)  The arbitrator granted the respondent's application for a prehearing discovery subpoena of the third party's business records and then granted the respondent's subsequent motion to compel.  (*Id.* at p. 369.)  After the trial court denied the third party's petition seeking judicial review of the arbitrator's discovery order and granted the respondent's separate petition to enforce the discovery order, the third party appealed both orders and argued that an arbitrator does not have authority under California law to compel nonparty discovery.  (*Id.* at pp. 369-370, 391.)

In *Aixtron*, the court determined that the parties did not provide for discovery in their arbitration agreement under the CAA because the agreement did not mention section 1283.05[6] or even contain the word "discovery."  (*Aixtron, supra*, 52 Cal.App.5th at

_____

[6] Section 1283.05 provides for depositions and discovery under the CAA.  Former section 1283.1, subdivision (b) (added by Stats. 1970, ch. 581, § 3, p. 1158, as amended by Stats. 1970, ch. 1045, § 3, p. 1869, and repealed by Stats. 2024, ch. 986, § 8) stated section 1283.05 could be incorporated into a arbitration agreement "[o]nly if the parties

p. 397.)  The court also reviewed Rule 17 of the JAMS Rules[7] and specified that the terms of Rule 17 did not authorize discovery from nonparties or provide discovery rights comparable to section 1283.05.  (*Id.* at pp. 403-404.)  The *Aixtron* court concluded that the arbitrator did not have the authority to issue a subpoena compelling prehearing discovery from the third party.  (*Id.* at p. 404.)

*Aixtron* established that an arbitrator could not compel third parties to cooperate with discovery orders under the JAMS Rules effective July 1, 2014, the same JAMS Rules in effect here.[8]  But *Aixtron* did not consider the issue of whether the arbitration agreement was unconscionable.  Rather, the court considered the authority of the arbitrator to order and compel discovery from a nonparty where that party objected to the arbitrator's order.  The *Ramirez* Court, which did not disapprove of *Aixtron* or discuss it, made clear that the review of an arbitration agreement for unconscionability turns on whether a party has access to adequate discovery to vindicate its claims.  (See *Ramirez*, *supra*, 16 Cal.5th at pp. 504-505, citing *Armendariz*, *supra*, 24 Cal.4th at pp. 105-106.)  The Court then emphasized that "giving the arbitrator authority to expand discovery" is one way to ensure adequate discovery is available.  (*Ramirez*, at p. 506.)  When a clause

---

by their agreement so provide."  After *Aixtron* was decided, Senate Bill No. 940 (2023-2024 Reg. Sess.) repealed section 1283.1.  Effective January 1, 2025, parties can now obtain third party discovery under the CAA without explicitly incorporating section 1283.05 into their arbitration agreement.  However, as discussed above, we determine whether an arbitration agreement is unconscionable without relying on subsequent developments.  (See *Ramirez*, *supra*, 16 Cal.5th at p. 506.)

[7] Although the arbitration clause only referenced the AAA rules and the record did not contain any other written agreement superseding the arbitration clause, the respondent informed the court that the parties had agreed to abide by the JAMS Rules.  (*Aixtron*, *supra*, 52 Cal.App.5th at p. 403.)  The JAMS Rules themselves were not incorporated into the written agreement between the parties.  (*Ibid.*)

[8] A court may judicially notice the "[r]ecords of . . . any court of this state."  (Evid. Code, § 452, subd. (d).)  On our own motion, we shall take judicial notice of the JAMS Employment Arbitration Rules and Procedures from appellant's appendix in *Aixtron, supra*, 52 Cal.App.5th 360, for the purpose of comparing the JAMS terms in *Aixtron* to the JAMS Rules in effect here.  (Evid. Code, §§ 452, subd. (d), 459.)

is ambiguous as to whether the arbitrator can order additional discovery and susceptible to an interpretation that either renders it valid or void, the court should select an interpretation that makes the contract valid. (*Id.* at pp. 506-507.)

Here, the parties agreed when the agreement was executed that the incorporated JAMS Rules would control the arbitration procedures.[9] Examining those rules with the reasoning of *Ramirez* in mind, we observe that Rule 17(b) allows both parties to take one deposition of the opposing party or individual under the control of the opposing party without the arbitrator's approval. It then gives the arbitrator the authority to expand discovery, permitting Vo the opportunity to obtain the third party discovery required to adequately arbitrate his claims. Rule 17(b) explicitly states: "[t]he necessity of additional depositions shall be determined by the [a]rbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing [p]arties and the witness."

This language could have been more precise but does not limit expanded discovery to parties to the arbitration agreement or those under their control and does not preclude an arbitrator from making nonparty discovery available to the parties. As we note above, the Supreme Court recently clarified that we should not construe discovery provisions defining the scope of an arbitrator's authority "in . . . a limited way" and instead should select an interpretation that renders an agreement valid. (*Ramirez*, *supra*, 16 Cal.5th at pp. 506-507.) We thus disapprove of *Aixtron* to the extent it interpreted the scope of an arbitrator's authority narrowly. In accordance with *Ramirez*, we construe the

___

[9] JAMS Rule 17(d) gives the arbitrator the authority to decide all disputes regarding discovery issues. The *Ramirez* Court found arbitration language that "give[s] the arbitrator the authority to resolve 'all discovery disputes' in a manner that allows 'a full and equal opportunity' to discover and present relevant and material evidence" permitted the arbitrator to order additional depositions of the opposing party. (*Ramirez*, *supra*, 16 Cal.5th at p. 506.) We construe Rule 17(d) to allow the arbitrator to order additional discovery between the parties.

15

rule to provide the arbitrator the authority to make available additional nonparty discovery if necessary to allow fair arbitration of the claim.

Under the agreement here, there is no limitation to the expanded discovery and no additional burden on either party to justify such discovery. (Cf. *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1059 [finding a discovery provision that allowed the arbitrator to order discovery only upon showing of "substantial need" was unconscionable].) Simply, a party must obtain the approval of the arbitrator. The *Aixtron* court recommended full judicial review of discovery requests directed to nonparties by concluding that " 'arbitrators are not required to follow the law when resolving the parties' disputes . . . .' [Citation.]" (*Aixtron*, *supra*, 52 Cal.App.5th at p. 404.) But the *Ramirez* Court stated that, when assessing an agreement for unconscionability, we must assume that an arbitrator will act "reasonably and in conformity with the law." (*Ramirez*, *supra*, 16 Cal.5th at p. 506.) This assumption eliminates the risk of " 'substantially compromis[ing] the legal rights of nonparties against whom erroneous discovery orders may be made.' [Citation.]" (*Aixtron*, at p. 404.)

We observe that the procedural posture of the case before us differs from that in *Aixtron*. In *Aixtron*, a third party appealed the trial court orders enforcing compliance with an arbitrator's subpoena to produce records. (*Aixtron*, *supra*, 52 Cal.App.5th at pp. 369-370.) Here, both Vo and TCU are parties to the agreement, and no third party is refusing to comply with a subpoena. To the extent there may be a recalcitrant third party in the course of the arbitration process, an arbitrator would not have the authority to enforce compliance with its discovery order under the July 1, 2014 JAMS Rules applicable to the agreement here and in *Aixtron*. But the Supreme Court has clarified that we review an arbitration agreement for unconscionability at the time of formation. (See *Ramirez*, *supra*, 16 Cal.5th at p. 506.) Consistent with the direction of *Ramirez*, we do not determine that the agreement is unenforceable by presuming that a third party would

16

refuse to respond to a discovery order issued by the arbitrator. Here, the JAMS Rules incorporated into the arbitration agreement permit an arbitrator to allow for necessary third party discovery. The possibility of a recalcitrant third party witness does not preclude a holding that the discovery available under the provision is adequate and the agreement valid.

For these reasons, we conclude the agreement here is not substantively unconscionable. We note that the trial court did not have the benefit of the Supreme Court's opinion in *Ramirez* when it issued its order in reliance on *Aixtron*. *Ramirez* clarifies how the high court defines the scope of an arbitrator's authority when assessing an arbitration agreement for unconscionability. At the time the agreement was made, both Vo and TCU agreed to use the JAMS Rules to arbitrate their claims. Post-*Ramirez*, we conclude the JAMS Rules incorporated into the arbitration agreement here provide an arbitrator the authority to permit nonparty discovery to allow fair arbitration of Vo's statutory claims. Applying the sliding scale rubric established in the Supreme Court's opinion, and considering all the relevant circumstances, we conclude the agreement is not unconscionable. Because we hold that the agreement is not unconscionable, we do not reach the issue of severability.

## III.   DISPOSITION

The trial court's order denying Technology Credit Union's motion to compel arbitration is reversed. The trial court is directed to enter a new order granting Technology Credit Union's motion and staying the litigation pursuant to California Code of Civil Procedure, section 1281.4.

_____
Greenwood, P. J.

WE CONCUR:

_____
Grover, J.

_____
Danner, J.

H051619
Vo v. Technology Credit Union

Trial Court:                               Santa Clara County
                                           Superior Court No.:  23CV417184


Trial Judge:                               The Honorable Frederick S. Chung



Attorney for Plaintiff and Respondent      Robert Johnston King
Thomas Vo:                                 King & Siegel LLP




Attorneys for Defendant and Appellant      Jonathan Michael Cohen
Technology Credit Union:                   Robyn Catherine Callahan
                                           Chancellor Way-Chan Tseng
                                           Joseph Cohen & Del Vecchio, P.C.

Vo v. Technology Credit Union
H051619