Filed 12/15/25  Young v. Refrigeration Supplies Distributor CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TIMOTHY ALAN YOUNG, | |
| Plaintiff and Respondent, | G064837 |
| v. | (Super. Ct. No. 30-2024-01389982) |
| REFRIGERATION SUPPLIES DISTRIBUTOR, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

Snell & Wilmer, William S. O'Hare, Brian J. Mills, Anne E. Dwyer and Jing Hua for Defendant and Appellant.

Wilshire Law Firm, Tyler J. Woods, Peter J. Horton, Noel J. Meza, and Benjamin Haber for Plaintiff and Respondent.

As a condition of his employment with defendant Refrigeration Supplies Distributor, a refrigeration parts and heating, ventilation, and air conditioning equipment wholesaler operating in the western United States, plaintiff Timothy Alan Young signed an arbitration agreement. When he subsequently filed a class action lawsuit against defendant claiming various Labor Code violations, defendant unsuccessfully moved to compel arbitration of his claims on an individual basis. On appeal, defendant challenges the trial court's conclusion that the arbitration agreement is unconscionable in certain respects and its determination that severance of the unconscionable provisions is not appropriate under the circumstances. Because we conclude the circumstances, context, and content of the agreement demonstrate moderate procedural and substantive unconscionability, we find no error in the court's unconscionability conclusion. We likewise find the court did not abuse its discretion by declining to enforce any part of the agreement. Accordingly, we affirm the order denying defendant's motion to compel arbitration.

FACTS

Plaintiff is a prior employee of defendant who worked as a warehouse shipping, receiving, and delivery driver in defendant's customer-facing store located in Modesto, California. In January 2022, as part of an onboarding process, defendant presented plaintiff with a "Mutual Binding Arbitration Agreement" (agreement), accompanied by a written communication from defendant's director of human resources. The latter provided notice that defendant "ha[d] adopted an alternative dispute resolution program to resolve complaints that an employee has with [defendant] and/or [defendant] has with an employee." It further explained "[a]rbitration is a process for resolving disputes outside of the court system,"

2

and stated the agreement would "allow each party to submit their own claims, which might otherwise have been brought in the court system, for resolution by the arbitrator." And in closing, the communication "encourage[d] all employees to review the attached [agreement]," as well as conveyed that "[a]ll employees are required to agree to and be bound by the . . . [a]greement."

The four-page agreement generally provides for mandatory binding arbitration under the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA), and optional mediation, of "any and all claims or disputes, past, present or future, that may arise between [plaintiff] and [defendant]." It expressly covers claims "that [defendant] may have against [plaintiff] or that [plaintiff] may have against [defendant] or its officers, directors, shareholders, members, owners, partners, employees, managers, and agents." With the exception of certain costs payable by plaintiff, defendant is "initially . . . responsible for the costs of the arbitration," and each party is responsible for their own attorney fees unless the arbitrator ordered otherwise. Among other provisions are a class action waiver and a severability clause, as well as a statement indicating plaintiff's agreement to use binding arbitration would be "confirmed by either [his] signature . . . on [the] . . . agreement . . . or by . . . acceptance or continuation of employment on receipt of [the agreement]."

After the end of plaintiff's employment relationship with defendant, plaintiff brought a class action lawsuit alleging various wage-and-hour violations under state law. Defendant responded by filing a motion to compel arbitration based on the agreement. It argued all of plaintiff's claims were required to be arbitrated on an individual basis because they were employment related and fell within the scope of the agreement. Plaintiff

opposed the motion, contending his claims should proceed on a class basis in court because (1) they were exempt from coverage by the FAA because he qualified as a transportation worker, and (2) the agreement purportedly signed by him was unenforceable due to unconscionability and severance was not appropriate under the circumstances.

Following a hearing, the trial court issued an 11-page written ruling denying defendant's motion. Although it found plaintiff failed to demonstrate applicability of the FAA transportation worker exemption, it concluded the agreement was both procedurally and substantively unconscionable. And because "[r]emedying the [agreement's] deficiencies would require substantive rewriting of the . . . agreement to contradict its plain language and to fill in omitted terms," the court declined to sever any provisions and refused enforcement of the agreement in its entirety.

Defendant timely appealed.

DISCUSSION

Defendant contends the trial court's failure to enforce the agreement constitutes error for two reasons. First, it argues there could be no finding of unconscionability because there was, at most, minimal procedural unconscionability and no substantive unconscionability. Second, it asserts that even if the unconscionability determination is upheld, the court abused its discretion in declining to simply sever the offending provisions from the agreement. We find no error.

I.

APPLICABLE LAW AND STANDARD OF REVIEW

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement. . . . A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable,

4

'save upon such grounds as exist for the revocation of any contract.' [Citation.] Unconscionability provides such grounds." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)

""""[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."""" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*).) Generally, both elements """"must . . . be present in order for a court to exercise its discretion to refuse to enforce a contract or clause . . . ." But they need not be present in the same degree. (*Ibid.*) """"Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Id.* at pp. 1243–1244.)

"[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." [Citation.]' [Citation.] . . . [C]ourts must be 'particularly attuned' to this danger in the employment setting, where

5

'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.'" (*Baltazar, supra*, 62 Cal.4th at p. 1244.) "'[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.'" (*Ibid.*)

The substantive aspect of "'[t]he unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""'overly harsh'"" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"'" [citation], or "unfairly one-sided" [citation].'" (*Baltazar, supra*, 62 Cal.4th at p. 1244.) There is no conceptual difference among these formulations. They all "point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."'" (*Ibid.*) "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*Id.* at p. 1245.)

Absent conflicting extrinsic facts, a trial court's unconscionability determination presents a question of law subject to de novo review. (*Ramirez, supra*, 16 Cal.5th at p. 493; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 247.) In contrast, "[i]f a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings." (*Ramirez*, at p. 493.)

6

## II.

### PROCEDURAL UNCONSCIONABILITY

Defendant concedes the agreement has some degree of procedural unconscionability. Undisputed evidence demonstrated it is a contract of adhesion, drafted by defendant and offered to plaintiff on a take-it-or-leave-it basis with no possibility of negotiation. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 (*Armendariz*).) Indeed, the human resources communication accompanying it stated "[a]ll employees are required to agree to and be bound by the [agreement]." And, the agreement stated plaintiff would be deemed to have accepted the agreement's terms either by signing the agreement or by accepting or continuing employment after receiving a copy of it.

Focusing on the sliding scale approach to an unconscionability determination, defendant asserts "[t]here is at most minimal procedural unconscionability" and, therefore, the agreement should be enforced unless there is a high degree of substantive unconscionability. This argument presumes the agreement's adhesive nature is the only procedurally unconscionable aspect.[1] Although not identified by the parties, we find a portion of the human resources communication which accompanied the agreement to be concerning. It states defendant's alternative dispute resolution program "utilize[s] a system of mutually selecting a neutral third-party who will be the arbitrator." This is misleading because mutual selection

---

[1] Even if adhesion alone was the sole factor rendering the agreement procedurally unconscionable, the Supreme Court has made clear we must nevertheless carefully scrutinize its content because of the "clear danger of oppression and overreaching" that accompanies it, particularly in the employment setting. (*Ramirez, supra*, 16 Cal.5th at p. 494.)

7

of an arbitrator was not guaranteed under the agreement. Rather, the agreement required the parties to "exercise their best efforts to mutually agree upon the selection of an [a]rbitrator," but "[i]f no such agreement [could] be reached, then a third party provider [would] be contacted for the purpose of securing an [a]rbitrator." Whether the provision of misinformation by the human resources director was done negligently, intentionally, or otherwise, it adds to the procedural unconscionability of the agreement notwithstanding the same communication's encouragement that employees review the agreement itself. (See *Velarde v. Monroe Operations, LLC* (2025) 111 Cal.App.5th 1009, 1015–1016.)

Adding to the element of surprise is the agreement's failure to specify the rules that will govern an arbitration.[2] Unlike in a litigation forum where procedural rules are based on the particular venue in which a case is filed, rules in an arbitral forum are generally determined based on agreement of the parties, with a plethora of options from which to choose. Thus, the agreement's silence about the controlling rules, and even how such rules might later be selected, left plaintiff in the dark as to the procedures he would ultimately encounter in arbitration.[3] (See *Carbajal v. CWPSC, Inc.*

---

[2] The trial court characterized this failure as substantively unconscionability, but we view it as also contributing to procedural unconscionability for the reasons we explain.

[3] Defendant cites authority stating a failure to attach to an arbitration agreement the rules designated in the agreement as controlling does not amount to substantive unconscionability. (See *Baltazar*, *supra*, 62 Cal.4th at p. 1246.) We find that authority inapposite because the agreement in this case did not even specify which rules would control or how such rules would be selected.

(2016) 245 Cal.App.4th 227, 245; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 631–633.)

Notwithstanding the lack of detailed circumstances in the record concerning plaintiff's signing of the agreement, these facts lead us to find moderate procedural unconscionability.

III.

SUBSTANTIVE UNCONSCIONABILITY

Turning our focus to "'"whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that [we] should withhold enforcement"'"" (*Ramirez, supra*, 16 Cal.5th at p. 495), defendant argues the agreement "is not substantively unconscionable under any of the theories offered by the trial court or [plaintiff]." We disagree.

*A. Scope*

We begin with the scope of the agreement. Although the agreement appears to equally encompass the types of claims likely to be brought by plaintiff and by defendant, its plain language stretches beyond the employment context. Specifically, in addition to binding arbitration being the exclusive means for resolving claims related to plaintiff's "seeking [of] employment [with defendant], employment by [defendant], [or] termination [of] such employment," the agreement likewise mandates arbitration for claims "having any relationship or connection whatsoever with [plaintiff's] . . . other association with [defendant]." Because the claims subject to the agreement encompass, with few exceptions, "any and all claims or disputes, past, present[,] or future," and the agreement "survives after the employment relationship terminates," the agreement's scope appears nearly limitless.

9

Defendant contends the text of the agreement and circumstances of its execution demonstrate it "extends only to claims arising out of or related to an employment or employment-like relationship." It relies on: (1) use of the words "employment" and "employee" "more than 15 times" in the accompanying human resources communication; and (2) language in the "Introduction" and "Included Claims" sections of the agreement which, from defendant's perspective, reference or anticipate "an employment, former employment, or similar relationship." We are not persuaded that any other language of the agreement changes the meaning of the unambiguous "Arbitration of Disputes" provision which includes the phrase "[b]oth [defendant] and [plaintiff] agree." The agreement's introduction is prefatory, and even as such makes a broad reference to defendant's commitment to use arbitration "to resolve all legal disputes . . . unless otherwise provided below." And, while the "Included Claims" section lists many types of claims which would tend to arise in the employment context, the accompanying "without limitation" language makes clear the list of included claims is nonexhaustive. Instead, the section's controlling clause is found at the beginning, providing: "Unless the claim or dispute is expressly excluded below, this [a]greement applies to any and all claims or disputes, past, present or future, that may arise between [plaintiff] and [defendant]."

As did the trial court, we find *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312 (*Cook*), instructive. The arbitration agreement at issue in that case, drafted by a university, "require[d] the arbitration of 'all claims, whether or not arising out of [the] [e]mployee's [u]niversity employment, remuneration or termination, that [the] [e]mployee may have against the [u]niversity or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees,

administrators, employees or agents, in their capacity as such or otherwise; and all claims that the [u]niversity may have against [the] [e]mployee.'" (*Id.* at p. 321.) The appellate court found this plain language required the plaintiff to arbitrate claims unrelated to their employment with the university. (*Ibid.*) In doing so, it rejected the university's urging to construe the language to mean something other than what it plainly stated to avoid an unreasonable result. (*Id.* at pp. 321–322.) Because neither the university nor the agreement provided an explanation to justify the broad scope, the appellate court concluded it was substantively unconscionable. (*Id.* at p. 325.)

Without explanation of a legitimate commercial need which justifies the unambiguous broad scope of the agreement in this case, we find the scope substantively unconscionable. (See *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536 ["business realities" creating special need for providing advantage to party with superior bargaining strength must be explained in contract or factually established].)

B. *Mutuality*

Similarly concerning is the agreement's lack of mutuality in a certain respect. It requires plaintiff to arbitrate all claims against defendant "or its officers, directors, shareholders, members, owners, partners, employees, managers, and agents," each of whom is expressly designated a direct or third party beneficiary, as well as "parties affiliated with [defendant's] employee benefit and health plans." However, there is no similar provision for those defendant related parties to arbitrate any claims they may have against plaintiff. As *Cook* explained, such a structure "provides a significant benefit to [the employer's] related entities without any reciprocal benefit to [the employee]" because under the law it is more difficult for a party to enforce an arbitration agreement against a nonsignatory than it

11

is for a nonsignatory intended third party beneficiary to enforce an arbitration agreement against a party. (*Cook, supra*, 102 Cal.App.5th at pp. 327–328.)

Defendant offers no cogent justification for the one-sided provision. It asserts the language reflects the realities of the parties' relationship because employees act on their own behalf and a company like defendant "can only act by way of others." Even assuming, arguendo, employees and companies so act, it does not help defendant. If a company acts by way of others, it would only be fair and level the playing field for the others acting for the company to be expressly bound by the arbitration agreement to the same extent as the company.

Without justification, the lack of mutuality in the identified provision makes it substantively unconscionable. (*Armendariz, supra*, 24 Cal.4th at pp. 117–118 [unconscionability turns on one-sided result and absence of justification].)

*C. Duration*

Based on a provision of the agreement stating it "survives after the employment relationship terminates," plaintiff argues the trial court correctly found the indefinite term of the agreement substantively unconscionable. We need not decide whether such a provision alone would be substantively unconscionable. Under the circumstances, we find the survival provision increases the unconscionability of the agreement because of the agreement's broad scope and requirement that plaintiff arbitrate any and all claims against defendant related parties. Combined together, the provisions make plaintiff forever bound to arbitrate virtually any type of claim against a wide variety of people and entities irrespective of when and how the claim

12

arises. No justification is proffered for such an expansive arbitration obligation.

## D. Arbitration Initiation and Rules

An additional ground on which the trial court found the agreement substantively unconscionable was its failure to provide information on how to initiate the arbitration process. The court reasoned that the lack of information impairs access to the arbitration process and may unreasonably benefit defendant by deterring an employee from trying to initiate the process. We agree, particularly in light of the agreement's silence on the applicable arbitration rules.

Although the agreement specifies "[t]he party asserting a claim must make an arbitration demand in writing within the legally applicable limitations period," it does not specify to whom the demand must be submitted or the required contents. Combined with the silence about which arbitration rules would apply, the lack of information could result in an employee being so confused or lost as to how to proceed "that they are deterred from bringing their wage claims at all." (*OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 131.) And, given the accessibility of the forums for wage disputes that an employee is giving up by agreeing to arbitration, the impediment placed on accessibility of arbitration renders these aspects of the agreement substantively unconscionable. (See *id.* at p. 130; *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146.)

## E. Conclusion

With both moderate procedural and substantive unconscionability, we conclude the agreement is unconscionable in certain respects and turn to the issue of severance.

13

## IV.

### SEVERANCE

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results. [Citation.] The 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.'" (*Ramirez, supra*, 16 Cal.5th at p. 513.) Although the applicable statute "'appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement,' it 'also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.'" (*Ibid.*; see also Civ. Code, § 1670.5.) We review a trial court's decision in this arena for an abuse of discretion. (*Ramirez*, at p. 513.)

Defendant argues the trial court "failed to follow the appropriate legal standard and relied on incorrect unconscionability findings" when it declined to enforce the entire agreement. The record shows otherwise.

After acknowledging the agreement contains a severance clause, the trial court accurately quoted the law concerning severance of an unconscionable provision. It then listed the unconscionable aspects of the agreement and explained that "remedying the deficiencies [it found] would require substantive rewriting of the arbitration agreement to contradict its plain language and to fill in omitted terms." Consistent with the law explained in *Ramirez*, the very case defendant cites in support of its argument on appeal, the court correctly determined it could not do so and, instead, declined to enforce the agreement. (*Ramirez, supra*, 16 Cal.5th at p. 516 ["If the unconscionability cannot be cured by extirpating or limiting the

14

offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract"].)

On the record before us, and in light of our unconscionability conclusions which are consistent with those of the trial court, we decline defendant's urging to "conduct [our] own severance analysis" and we conclude the trial court did not abuse its discretion in refusing enforcement of the agreement.[4]

## DISPOSITION

The order denying defendant's motion to compel arbitration is affirmed. Plaintiff is entitled to costs on appeal.


DELANEY, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.

---

[4] Because we uphold the denial of defendant's motion on unconscionability grounds, we do not address the parties' disagreement about whether plaintiff was exempt from the FAA under the transportation worker exemption.